USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/07/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                              :
JENNIFER MCELLIGOTT,                        :
                           Plaintiff,  :
                                            :          15 Civ. 7107 (LGS)
            -against-                  :
                                            :          **OPINION AND ORDER**
CITY OF NEW YORK, et al.,               :
                             Defendants.  :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Jennifer McElligott sues Defendants the City of New York (the "City"), Sergeant Franklin Bohr and Officers Eugene Donnelly, Nicholas Levesque, Gene Ryerson, Ryan Bracconeri, Brittany McGee and William Curly (the "Officer Defendants") for violations of federal and state law arising out of Donnelly's attacking her during a Post-Traumatic Stress Disorder ("PTSD") induced night terror. Defendants move to dismiss the Amended Complaint (the "Complaint") under Federal Rule of Civil Procedure 12(b)(6).[1] The motion is granted as to the federal claims, and the Court declines to exercise supplemental jurisdiction over the state law claims.

## I. BACKGROUND

       The following alleged facts are drawn from the Complaint and are accepted as true for the purpose of this motion. The facts are construed, and all reasonable inferences are drawn, in favor of Plaintiff as the non-moving party. *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

---

[1] Although Donnelly did not formally move to dismiss, Donnelly's letter to the Court dated June 29, 2017, is deemed to be his motion. *See generally Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (noting that pro se parties are entitled to "special solicitude").

### A. Officer Donnelly

Before joining the New York Police Department ("NYPD"), Donnelly had a history of alcohol abuse, resulting in his being arrested repeatedly, and sanctioned by the College of Charleston. Donnelly attended Alcoholics Anonymous meetings and abstained from alcohol for four years before entering the NYPD academy in July 2010. Donnelly disclosed his history of alcohol abuse and disciplinary and legal issues to the NYPD. The NYPD failed to investigate Donnelly's background or screen him for psychological problems. Donnelly was assigned to the 46th precinct, one of the most dangerous in the City. The NYPD did not monitor Donnelly for signs of relapse or trauma, or train him or officers in his precinct about PTSD and/or work-related stress and the importance of seeking treatment.

On May 4, 2012, Donnelly witnessed a man brandishing a pistol, chasing others down the street. Donnelly followed the suspect, who fired at Donnelly, in his car. Donnelly shot the suspect multiple times. A day or two later, Donnelly was ordered to report to an NYPD psychologist for a meeting lasting approximately thirty minutes. The psychologist provided no information about PTSD and did not suggest what to do if Donnelly were to experience symptoms of PTSD. The psychologist did not follow up with Donnelly after the appointment. Donnelly met with a peer counseling group, which provided only "vague direction as to services available to him."

Although the shooting was deemed justified, Donnelly spent the next thirteen months working in a warehouse copying summonses. He had little contact with colleagues. Donnelly was not assessed by NYPD mental health professionals to determine whether he was fit to return to active duty in March 2014. Donnelly was reassigned to the 46th precinct as a field intelligence officer, under Defendant Bohr's supervision. Donnelly frequently worked for days

without sleeping.  Donnelly's supervisors and fellow officers, including Bohr were aware that Donnelly was not sleeping and was engaging in self-medicating behaviors, but failed to act.

Donnelly resumed drinking alcohol while working in the NYPD warehouse.  Defendant Bracconeri saw Donnelly resume drinking, and Donnelly's "supervisors and co-workers" knew that Donnelly had exhibited "changed behaviors."  Donnelly experienced increasingly severe symptoms, including insomnia, night terrors, waking up gasping or screaming and sleepwalking.  During his sleep incidents, Donnelly sometimes reenacted police functions and engaged in aggressive behaviors, which led him to begin disassembling his gun before he went to sleep, as a precaution.

**B.    The Incident**

On June 10, 2014, Mayor Bill DeBlasio awarded Donnelly a Police Combat Cross -- the NYPD's second highest honor -- for his bravery during the May 4, 2012, incident.  That night, Donnelly went drinking with Bohr, Bracconeri, Levesque, Ryerson, McGee and Curley, all co-Defendants in this action.  The Officer Defendants "condoned, participated in, encouraged, and acquiesced in" Donnelly's binge drinking by engaging themselves in binge drinking, increasing the likelihood that Donnelly would engage in violent, drunken behaviors.  Donnelly, intoxicated, agreed to sleep at Ryerson's nearby apartment.

On June 11, 2014, at approximately 5:30 a.m., Donnelly sleepwalked out of Ryerson's apartment and kicked open the door to Plaintiff's apartment, which was in the same building.  Plaintiff screamed, and Donnelly told her "I am not a bad guy."  Donnelly threw Plaintiff to the ground, straddled her and hit her twenty to thirty times.  Acting out an arrest he had conducted the previous Friday, Donnelly screamed, "Shut up you ACS bitch.  I know you have kids here.  I know there are guns here."  Donnelly then searched Plaintiff's dresser, at which point Plaintiff

3

escaped. Donnelly returned to Ryerson's apartment and went back to sleep.

Plaintiff, who lived in the 46th precinct, called the police. A wanted poster was prepared and posted in the 47th precinct; but none of the Defendants, including Donnelly, reported that Donnelly was the suspect. On June 14, 2014, Donnelly was placed on modified duty, and his shield and gun were seized. Internal Affairs representatives told him, "[e]verything is going to be OK, there is counseling for this."

Donnelly was arrested on August 4, 2014, and charged with multiple counts of burglary and assault, criminal trespass, trespass and harassment. On September 29, 2014, he was indicted on two counts of assault, two counts of criminal trespass and one count of criminal mischief. On May 22, 2016, Donnelly was arrested and charged with driving while intoxicated. On March 26, 2017, Donnelly pleaded guilty to misdemeanor assault and was sentenced to three years of probation.

### C. The City

The Complaint further alleges the following: for at least two decades, the NYPD has known that officers, like Donnelly, suffer from substance abuse problems and PTSD stemming from their physically demanding and stressful jobs. Between 1995 and 2017, there were at least twenty-seven incidents (excluding the incident involving Donnelly) that likely resulted from or were related to the mental stress that police officers experience on the job and the NYPD's failure to address it. The NYPD fails to screen, supervise, monitor and treat officers adequately for PTSD -- even after they are involved in shooting incidents or otherwise stressful assignments -- and has failed to implement training, policies and procedures to remove the "deeply embedded and well known stigma within the NYPD" that "seeking assistance . . . would jeopardize [officers'] careers."

### D. Procedural History as to the John Doe Defendants

Plaintiff filed the original Complaint in this action on September 10, 2015, naming as Defendants the City, Donnelly, Commissioner William Bratton and John Does 1-10. On November 5, 2015, the Court stayed the proceedings pending the resolution of Donnelly's related criminal matter, but permitted Plaintiff to voluntarily dismiss any of the defendants, as discussed at an initial conference held on that day. On November 11, 2015, Plaintiff filed a notice of voluntary dismissal, dismissing Defendant Commissioner Bratton from the case without prejudice.

On November 23, 2015, Plaintiff filed an application requesting an extension of time to serve the John Doe Defendants, which was denied without prejudice to renewal until Plaintiff ascertains the John Doe Defendants' identities. Plaintiff's letter also stated that "[i]t is Plaintiff's understanding that in the course of the investigation in to the criminal matter [against Donnelly], an Internal Affairs Bureau report was prepared that should contain the names of the John Doe Defendants." Plaintiff did not seek to lift the stay for the limited purpose of requesting that the City produce the names of the John Doe Defendants, or compelling the City to produce the names.

On March 31, 2017, the parties filed a letter stating that Donnelly had pleaded guilty to a misdemeanor assault charge and that he would be sentenced on June 1, 2017. A conference was held on June 15, 2017, after which a scheduling order was entered and the stay was lifted. At the conference, Counsel for the City stated that he did not know the John Doe Defendants' identities; but Plaintiff had not sought to compel the City to investigate and disclose those defendants' identities by filing a motion for a *Valentin* order.

On June 22, 2017, Plaintiff served a non-party subpoena on the Bronx District Attorney's

Office (the "Bronx D.A.") seeking all documents in connection with the investigation and prosecution of Donnelly. On July 13, 2017, Plaintiff filed a letter motion regarding the Bronx D.A.'s refusal to produce certain documents, arguing, among other things, that "the [Internal Affairs Bureau] investigative file will provide the identities and other relevant information regarding the 'John Doe' defendants . . . ."

On July 20, 2017, a conference was held. Plaintiff stated that she had taken Donnelly's deposition two days earlier and learned some of the John Doe Defendants' identities. Also on July 20, 2017, Plaintiff filed an amended complaint (the operative pleading), replacing John Doe Defendants 1-10 with the six named Officer Defendants.

## II. LEGAL STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566, but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. DISCUSSION

The Complaint alleges claims against Donnelly and the Officer Defendants under § 1983 and state common law of negligence. The Complaint also alleges a state law claim of assault and battery against Donnelly, and a claim of § 1983 supervisory liability against Defendant Bohr, Donnelly's supervisor. Lastly, the Complaint alleges claims against the City for municipal

6

liability under *Monell* and for respondeat superior liability under state law. The § 1983 claim against Donnelly is dismissed because the Complaint fails to plead sufficient facts of state action; the § 1983 claims against the Officer Defendants are dismissed because they are barred by the applicable statute of limitations and because they fail to plead a constitutional violation; and the *Monell* claim against the City is accordingly dismissed for lack of an underlying constitutional violation by any of the individual Defendants. The Court declines to exercise supplemental jurisdiction over the state law claims. With this holding, the Court does not intend to minimize the egregious assault on Plaintiff, but to suggest that a state forum may be a more appropriate forum for the adjudication of Plaintiff's state law claims.

### A. Claim Against Donnelly Under § 1983

The Complaint's § 1983 claim based on alleged violations of Plaintiff's constitutional rights to be free from the use of excessive force and unreasonable searches and seizures fails because it does not sufficiently allege that Donnelly acted under color of state law.

To state a § 1983 claim, "[t]he conduct at issue 'must have been committed by a person acting under color of state law' and 'must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Where an off-duty police officer is alleged to have acted under color of law, courts in the Second Circuit consider:

> (1) whether defendants identified themselves as police officers at any time during the incident; (2) if plaintiff was aware that the defendants were police officers; (3) whether defendants detained or questioned the plaintiff in the line of duty or scope of employment as police officers; (4) if defendants drew a firearm or arrested the plaintiff; (5) whether defendants were engaged in any investigation or any aspect of the traditional public safety functions of police work.

*Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) (numbers added and internal

quotation marks and citation omitted), *aff'd*, 409 F. App'x 464 (2d Cir. 2011) (summary order). Here, Donnelly never identified himself as an officer, stating only that he was "not a bad guy." He was not wearing a uniform. Nothing about the incident would have put Plaintiff on notice that Donnelly was a police officer.[2] Donnelly did not question Plaintiff or attempt to handcuff or arrest her, and he did not draw his weapon. Donnelly was not "engaged in any investigation or . . . the traditional public safety functions of police work," as he was not conscious during the encounter. *Id.* On the whole, Donnelly's behavior was consistent with a home invasion or burglary, not a police encounter. Because the Complaint fails to allege adequately that Donnelly acted under color of law, this claim fails.

> B. **Claims Against the Officer Defendants Under § 1983**

The § 1983 claim against the Officer Defendants is dismissed as time-barred. Section 1983 actions filed in New York are "subject to a three-year statute of limitations," which accrues "when the plaintiff knows or has reason to know of the injury." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (internal quotation marks and citation omitted). Plaintiff's § 1983 claim accrued on June 11, 2014, the date on which Donnelly attacked Plaintiff. Therefore, Plaintiff was required to file the Complaint and name the John Doe Defendants by June 11, 2017. Plaintiff timely filed the initial complaint against Donnelly, the City, the Police Commissioner and John Doe police officers on September 10, 2015. Plaintiff filed the Amended Complaint (the operative pleading) substituting the John Doe Defendants with the named Officer Defendants and dropping the Police Commissioner on July 20, 2017. Because Plaintiff did not replace the John Does with actual people until after the limitations period expired, her claims

---

[2] Defendants state in support of their motion that Plaintiff testified in a state court proceeding that she did not know that Donnelly was a police officer at the time of the attack, but Defendants did not provide a copy of the transcript.

8

against them are untimely. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." (internal quotation marks omitted)); *accord Kelly v. City of New York*, No. 15 Civ. 53, 2017 WL 3107207, at *2 (S.D.N.Y. July 17, 2017).

Neither tolling under CPLR § 215(8) nor relation back under Federal Rule of Civil Procedure 15(c) applies. Section 215(8)(a) states:

> Whenever it is shown that a criminal action against the *same defendant* has been commenced with respect to the event or occurrence from which a claim governed by this section arises, the plaintiff shall have at least one year from the termination of the criminal action . . . to commence the civil action, notwithstanding that the time in which to commence such action has already expired or has less than a year remaining. (emphasis added).

The Officer Defendants were not charged as co-defendants in Donnelly's criminal proceeding and therefore do not qualify as the "same defendant." *See Villanueva v. Comparetto*, 580 N.Y.S.2d 30, 32 (2d Dep't 1992) ("Although CPLR § 215(8) extended the Statute of Limitations against [the corporation president], that provision was inapplicable against [the corporation], since the latter was not party to criminal proceedings."); *accord Hirt v. Mancuso*, 919 N.Y.S.2d 431, 432 (4th Dep't 2011).

The Complaint also does not relate back. Under Rule 15(c)(1)(C), an amended pleading that "changes the party or the naming of the party against whom a claim is asserted" relates back to the date of the original pleading if the claim asserted against that party arises out of the same "conduct, transaction, or occurrence" and if, within the time limit for service, the new party "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

9

The last element -- whether Defendants knew or should have known that the action would have been brought against them but for a mistake -- is not met. Plaintiff did not identify the six officers by name in the original complaint because she did not know their identities, which is not a "mistake" for purposes of the rule. "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Sewell v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015); *see also Hogan*, 738 F.3d at 518 (holding that "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake").

Relation back under Rule 15(c)(1)(A), which states that a pleading relates back when "the law that provides the applicable statute of limitations allows relation back," also does not apply. *Hogan*, 738 F.3d at 518. Courts "look to the entire body of limitations law that provides the applicable statute of limitations." *Id.* Here, CPLR § 1024, which governs John Doe defendants, and § 203, which governs relation back generally, provide the relevant law.

### 1. CPLR § 1024

"To take advantage of § 1024, a party must . . . (1) exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name [and] (2) describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Id.* at 519 (internal quotation marks omitted and numbers added). Based on the procedural history of the case as it relates to the John Doe Defendants, Plaintiff did not exercise the due diligence necessary to satisfy the statute. Although the case was stayed on November 5, 2015, pending the resolution of Donnelly's related criminal case, Plaintiff did not thereafter (before the statute of limitations had run) seek to lift the stay for the limited purposes of (1) seeking a

10

*Valentin* order compelling the City's cooperation to identify the John Doe Defendants; (2) requesting that the City produce the Internal Affairs Bureau report, which Plaintiff believed, as early as November 23, 2015, named the John Doe Defendants, or requesting that the City produce the John Doe Defendants' names; or (3) seeking to compel the City to produce either the report or the names. *Compare with Lanorith v. Truscelli*, No. 15 Civ. 617, 2017 WL 3634600, at *5–6 (E.D.N.Y. Aug. 22, 2017) (in a § 1983 case, holding that the plaintiff was diligent where he requested files related to his criminal case before the limitations period expired, but did not learn the John Doe officers' names until the defendants served their initial disclosures). Plaintiff therefore has not demonstrated diligence.

### 2. CPLR § 203

Under § 203(c), an amendment relates back where:

> (1) both claims arose out of the same conduct, transaction or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for [a] mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.

*Buran v. Coupal*, 661 N.E.2d 978, 981 (N.Y. 1995); *accord Girau v. Europower, Inc.*, 317 F.R.D. 414, 424 (S.D.N.Y. 2016). The Complaint does not relate back under the statute because Plaintiff cannot satisfy § 203's third prong. Because the "['mistake'] requirement closely tracks the federal relation-back requirement of Rule 15(c)(1)(C)," Plaintiff "fails to satisfy the state's corollary to that rule, as well." *Vasconcellos v. City of New York*, No. 12 Civ. 8445, 2014 WL 4961441, at *8 (S.D.N.Y. Oct. 2, 2014) (relying on *Malament v. Vasap Constr. Corp.*, 728 N.Y.S.2d 381, 381 (2d Dep't 2001) and *Buran*, 661 N.E.2d at 982 (noting that CPLR § 203 was "patterned largely after the Federal relation back rule")); *accord Kelly*, 2017 WL 3107207, at *3 (noting that "C.P.L.R. § 203(c) and (f) function as New York State's analog to Rule 15(c)(1)(C)

and closely track the federal relation-back requirements, including a similar interpretation of mistake") (internal quotation marks and citation omitted); *Briggs v. Cty. of Monroe*, No. 09 Civ. 6147, 2016 WL 1296060, at *10 (W.D.N.Y. Mar. 29, 2016) (same and collecting cases). Contrary to Plaintiff's suggestion, *Buran*'s statement that "[w]hen a plaintiff intentionally decides not to assert a claim against a party known to be potentially liable" to gain a tactical advantage, the third prong is not met, is beside the point. Plaintiff has failed to meet § 203's third prong, not because she acted in bad faith, or intentionally decided not to sue the Officer Defendants, but because she did not know their identities.

Accordingly, the § 1983 claim against the Officer Defendants is dismissed as untimely. The § 1983 claim is dismissed for the additional reason that it does not plead a constitutional violation, as discussed below.

### C. Claim Against the City Under § 1983

The Complaint alleges liability against the City based on an alleged policy, practice or custom of deliberate indifference to the alcohol and substance abuse of its officers. Specifically, the Complaint alleges that the City failed to adopt and implement policies for screening, monitoring, training, supervising and disciplining its officers, which caused the violation of Plaintiff's constitutional rights. This claim is dismissed.

#### 1. Donnelly's Conduct as a Basis for Municipal Liability

To hold a municipality liable for a constitutional violation under § 1983, a plaintiff must prove that "the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)); *accord Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016). As explained, the Complaint does not plead

sufficient facts to suggest that Donnelly violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments. Because the Complaint does not adequately allege an underlying constitutional violation by Donnelly, Donnelly's alleged conduct cannot be the basis for a *Monell* claim. *See Askins v. Doe 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("*Monell* does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy."); *Cohen v. Walcott*, No. 13 Civ. 9181, 2017 WL 2729091, at *5 (S.D.N.Y. June 23, 2017) ("Where . . . a plaintiff fails to establish an underlying constitutional violation there can be no liability under *Monell*.").

### 2. The Officer Defendants' Conduct as a Basis for Municipal Liability -- State Created Danger Theory

The Officer Defendants' alleged conduct similarly provides no basis for a *Monell* claim because the Complaint fails to plead adequately that those defendants' conduct constituted a constitutional tort.[3] Plaintiff argues that the City is liable under *Monell* based on a "state created danger" theory, under which "[a] state actor may be held liable to a victim of private violence . . . if the actor engaged in conduct that 'affirmatively enhanced the risk of violence.'" *Torres v. Graeff*, 700 F. App'x 80, 81 (2d Cir. 2017) (summary order) (quoting *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 429 (2d Cir. 2009)). Plaintiff alleges that the Officer Defendants affirmatively increased the risk of harm to Plaintiff by encouraging Donnelly to drink excessively, even though at least Defendant Bracconeri knew that Donnelly had a history of alcohol abuse and experienced night terrors.

---

[3] That these claims are untimely, however, is not relevant to this analysis. *See Askins*, 727 F.3d at 254 (explaining that "where the plaintiff has brought a timely suit against the municipality and has properly pleaded and proved that he was the victim of the federal law tort committed by municipal actors and that the tort resulted from an illegal policy or custom of the municipality, the fact that the suit against the municipal actors was untimely, or that the plaintiff settled with them, or abandoned the suit against them, is irrelevant to the liability of the municipality").

13

As a threshold matter, to state a claim under § 1983 based on an alleged constitutional violation, a plaintiff must establish that there was state action. *See Cornejo*, 592 F.3d at 127. Plaintiff's argument presupposes that the Officer Defendants were acting under color of state law while they were out celebrating and drinking with Plaintiff on the night of the attack. The Complaint alleges that "by engaging in the behaviors aforesaid [*i.e.*, by drinking with Donnelly and allegedly thereby condoning, encouraging and acquiescing in his binge drinking] Defendant Officers communicated to Defendant Donnelly that he would not be arrested, punished, or otherwise interfered with in the event that Defendant Donnelly engaged in the types of [drunken, violent] behaviors aforesaid." This allegation is conclusory and unsupported by factual allegations. Even if the Officer Defendants condoned or encouraged Donnelly's heavy drinking while off-duty, there are no allegations that they "communicate[d], explicitly or implicitly, official sanction of private violence." *Okin*, 577 F.3d at 429. The Complaint fails to plead facts sufficient to show that the Officer Defendants were acting under color of state law, as no facts are pleaded that they engaged in "*any* conduct arguably invoking 'the real or apparent power of the police department.'" *Claudio*, 409 F. App'x at 466 (emphasis in original) (quoting *Pitchell*, 13 F.3d at 548).

This case is in contrast to *Pena v. DePrisco*, where the Second Circuit held that the Due Process Clause could be violated where police officers implicitly communicated that they condoned an off-duty police officer's driving while intoxicated, which resulted in several deaths. 432 F.3d 98, 111 (2d Cir. 2005). The Court stated, "[T]he key question is whether the individual defendants told, or otherwise communicated to, [the defendant] that he could drink excessively and drive while intoxicated without fear of punishment." *Id.* The Court explained that "to the extent that fellow officers and some supervisors participated in or condoned [the defendant's]

14

behavior, and even . . . invited [him] to drive after drinking heavily, it could be inferred . . . that those defendants . . . indicated to [him] that he would not be disciplined for his conduct." *Id.* The inference of "official sanction" was "weaker as to the officers who drank with [the defendant] only for a few hours," and stronger as to the officers who allowed the defendant, while intoxicated, to drive them to a bar, and later, to the precinct. *Id.* at 111 n.18. In contrast, here, the Complaint does not allege any facts to support an inference that the Officer Defendants assured Donnelly that he could engage in violent or illegal conduct, including breaking into Plaintiff's apartment and assaulting her, without fear of punishment or other consequences. The state created danger theory is not so broad as to create liability under the Due Process Clause on the part of off-duty police officers any time they drink together outside of work and something goes awry.

Even if there were sufficient allegations of state action, the Complaint also fails to allege any facts to support an inference that the Officer Defendants' conduct increased the risk to Plaintiff of any foreseeable harm, a necessary element of a claim based on a state *created* danger theory. In *Pena*, the harm that ultimately resulted from the officer defendants' encouraging the defendant to drive drunk -- hitting and killing multiple pedestrians -- was the predictable and foreseeable consequence of their conduct. *Id.* at 111. Here, drawing all inferences in Plaintiff's favor, the harm that the Officer Defendants' conduct allegedly caused -- the attack on Plaintiff in her apartment -- cannot be characterized as the "foreseeable and fairly direct" consequence of encouraging Donnelly to drink alcohol, even if their doing so was ill-advised. *See Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (quoting *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006), for the proposition that "a state created danger cause of action is only cognizable where 'the harm ultimately caused was foreseeable and fairly direct'").

15

Even assuming that the Complaint pleads sufficient facts to show that the Officer Defendants acted under color of state law to create a danger, the claim still fails. "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin*, 577 F.3d at 431 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." *Lombardi*, 485 F.3d at 81 (internal quotation marks omitted); *accord Castro v. Windham*, No. 16 Civ. 8148, 2017 WL 4676644, at *5 (S.D.N.Y. Sept. 19, 2017). "In gauging the shock, 'negligently inflicted harm is categorically beneath the threshold,' while 'conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'" *Lombardi*, 485 F.3d at 82 (quoting *Lewis*, 523 U.S. at 849); *Stovall v. Wilkins*, No. 15 Civ. 2163, 2016 WL 5478509, at *4 (S.D.N.Y. Sept. 29, 2016).

Although Donnelly's conduct on the night of the attack certainly shocks the conscience, only the Officer Defendants' and not Donnelly's conduct is relevant to this analysis. The Complaint fails to plead sufficient facts that the Officer Defendants' conduct was "brutal," "offensive to human dignity," or generally, "conscience shocking, in a constitutional sense." *Pena*, 432 F.3d at 114; *Lombardi*, 485 F.3d at 81. Unlike in *Pena*, where the officer defendants affirmatively encouraged the plaintiff to engage in conduct that "presented [an] obvious risk of severe consequences and extreme danger" -- drunk driving -- here, the Complaint alleges only that the Officer Defendants encouraged Donnelly to drink excessively (despite some of their knowing about his history of alcohol abuse). Drinking while off-duty, even drinking heavily,

16

does not alone create the kind of obvious risk of severe consequences and extreme danger that was present in *Pena* and that the Second Circuit held shocked the conscience. Nor are there any facts to support an inference that the Officer Defendants had any reason to believe that Donnelly was likely to harm anyone. *See Lesperance v. Cty. of St. Lawrence*, No. 10 Civ. 1273, 2011 WL 3651161, at *6 (N.D.N.Y. Aug. 18, 2011) ("While deliberate indifference to the welfare of a private citizen may rise to the level of conscious shocking . . . there are no allegations . . . supporting the contention that Defendants had reason to believe that [a third party] intended to assault Plaintiff."). To the contrary, the Complaint alleges that, after becoming intoxicated, Donnelly went home with one of the Officer Defendants to go to sleep. Because the Complaint fails to plead adequately that the Officer Defendants engaged in conduct and possessed culpable knowledge that affirmatively increased the risk to Plaintiff of a foreseeable harm, the Complaint fails to state a claim against the Officer Defendants based on a state created danger.

### 3. The Officer Defendants' Conduct as a Basis for Municipal Liability -- Alleged Denial of Meaningful Access to Courts

To the extent that the Complaint alleges a *Monell* claim based on the Officer Defendants' "denying Plaintiff meaningful access to the courts" by "engag[ing] in a cover-up" to protect themselves and Donnelly from exposure to criminal liability, this claim also fails. "In a section 1983 claim alleging a cover-up by government agents, the constitutional right at issue is the First Amendment right of access to courts . . . ." *Tavares v. N.Y.C. Health & Hospitals Corp.*, No. 13 Civ. 3148, 2015 WL 158863, at *7 (S.D.N.Y. Jan. 13, 2015). Right of access claims fall into two categories, neither of which is applicable here. *Sousa v. Marquez*, 702 F.3d 124, 127–28 (2d Cir. 2012). The first category involves a "systemic official action" that prevents a plaintiff from "preparing and filing suits at the present time," in which case the remedy is to remove the impediment so that the plaintiff can pursue the claim. *Christopher v. Harbury*, 536 U.S. 403,

17

413 (2002). For the second category, "the theory is that the cover-up has made it impossible for the plaintiff to litigate an underlying claim, because material evidence was destroyed, for instance, or because the statute of limitations expired before the plaintiff discovered the cover-up." *Tavares,* 2015 WL 158863, at *7 (citing *Christopher*, 536 U.S. at 413–14 & n.11); *see also Sousa*, 702 F.3d at 127–28. "The viability [of this second category] of backward-looking right-of-access claims is far from clear in th[e Second] Circuit," but would be "available only if a judicial remedy was completely foreclosed by the false statement or nondisclosure." *Sousa*, 702 F.3d at 128 (2d Cir. 2012).

Here, neither category is applicable because plaintiff was able to identify Donnelly as the perpetrator and file claims against him in this suit. Even if the Officer Defendants' failure to report that Donnelly was the suspect prolonged the investigation into the identity of Plaintiff's attacker, the Complaint fails to plead facts suggesting that they created a continuing impediment or that Plaintiff has been "completely foreclosed" from litigating her claims against Donnelly. Therefore, this claim cannot be the basis for a *Monell* claim.

As the Complaint fails to plead any underlying constitutional violation by an individual Defendant, this Opinion does not address whether the City was the "moving force" behind Plaintiff's injuries, and the *Monell* claim is dismissed.

        **D.**        **State Law Claims Against the City, Donnelly and the Officer Defendants**

Plaintiff's remaining claims arise under state law. A district court may decline to exercise supplemental jurisdiction over claims arising under state law if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In considering whether to exercise supplemental jurisdiction, courts must consider "[judicial] economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir.

2004). Considering these factors will usually lead to the dismissal of the non-federal claims when the federal claims have been dismissed at a relatively early stage. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Here, the federal claims against Defendants are dismissed on a Rule 12(b)(6) motion, while discovery is still ongoing, following a stay pending related criminal proceedings. It is therefore appropriate to decline to exercise supplemental jurisdiction. *See, e.g.*, *Dudley v. Singas*, No. 16 Civ. 1548, 2017 WL 5312131, at *3 (E.D.N.Y. Nov. 13, 2017) (declining to exercise supplemental jurisdiction over state law negligence claim after dismissing federal law claims).

## IV. CONCLUSION

The motion to dismiss is GRANTED. The Clerk of Court is directed to mail a copy of this Opinion to pro se Defendant, close the motion at Docket No. 75 and close the case.

Dated: December 7, 2017
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**